# The Liverpool, London & Globe Insurance Company
# v. John A. S. Verdier and another.

*Fire insurance: Contribution: Averaging the loss: Subsisting policy.* In a
contest as to the adjustment of the proportion of a loss by fire, under a
policy providing for averaging the loss, which one of several insurers of
a firm should bear, a policy in another company, taken in the individual
name of one of the partners prior to the formation of the partnership,
and never assigned to the firm, though by the terms of the partnership
agreement all insurance was to be, but which was shown to have been
treated and dealt with, both by said firm and by the company issuing it,
as a subsisting policy in full force in favor of the firm, is held to be en-
titled to be drawn into the adjustment and to be chargeable with its
proportion of the loss, and to that extent to reduce the amount recover-
able upon the policy in suit.

*Heard November 2.     Decided January 5.*

Error to Kent Circuit.

*Hughes, O'Brien & Smiley,* for plaintiff in error.

*Norris, Blair & Stone,* for defendants in error.

GRAVES, J:

The defendants in error recovered in the court below on

a fire policy issued to them in their firm name of Verdier & Brown by the company.   The risk covered by the policy was from the 15th day of May, 1874, until the 15th day of May, 1875, and was taken on Verdier & Brown's "stock of hardware and gas fixtures, consisting of stoves, shelf goods, tinware, furnaces, pumps, mantels, plumbing materials, gas fixtures, gas pipes and such other goods usually kept on sale by them as dealers in hardware and gas-fitters' goods, contained in three-story brick, tin roof building, situated on the east side of Canal street, No. 102, Grand Rapids, Mich." The amount of the risk was three thousand dollars, but the policy permitted other concurrent insurance of nine thousand dollars, and in fact there was other insurance in the association called the Underwriters, and also in the Merchants' Insurance Company, and making with that taken by the plaintiffs in error eight thousand dollars.   That of the Merchants' company, however, included a small sum upon tools. The loss happened on the 4th of June, 1874, but was only partial.   It amounted to six thousand eight hundred and eighteen dollars and twenty cents.

The plaintiff in error claimed that besides these insurances, there was one existing when the fire happened, of three thousand dollars, issued by the Home Insurance Company, and which ought to be taken into account in calculating the amount or share of the entire loss to be borne by them.   This position being controverted by the assured, the plaintiffs in error, on the 15th of August, 1874, and before suit, tendered one thousand nine hundred and three dollars and seventy-six cents, as the sum they were liable for on the basis of the Home Company's policy being reckoned amongst those to be considered in fixing the sum called for from plaintiffs in error under the agreement in their policy. This was several hundred dollars less than they were bound to pay if the policy of the Home Insurance Company was excluded.   The defendants in error continued in their opinion, and finally claimed upon the trial that the Home policy was not to be considered at all in fixing the amount lawfully

payable by plaintiffs in error under the agreement in their policy, and the court below, being of that opinion, charged accordingly. And the question now is, whether it appears by this record that the court erred in so ruling. If it did, the recovery was excessive; if otherwise, it was not. To decide the point we must be governed by the record. The policy in suit is set forth, and by the seventh article the parties contracted as follows: "In case of any other insurance upon the property hereby insured, whether made prior or subsequent to the date of this policy, the assured shall be entitled to recover of this company no greater proportion of the loss sustained than the sum hereby insured bears to the whole amount insured thereon, without reference to the dates of the different policies, or their invalidity from want of notice of this or other insurance, or from the violation of any of their conditions, or the insolvency of any or all the other insurance companies. And it is hereby declared and agreed that in case of the assured holding any other policy in this or any other company on the property insured, subject to the conditions of average, this policy shall be subject to average in like manner."

It appeared in evidence that the Home Insurance Company of the city of New York insured by their policy of May 1st, 1873, the defendant in error, John A. S. Verdier, in the sum of three thousand dollars for the term of one year, "on his stock of hardware, tin, iron, stoves and such other articles as are usually kept on sale by him as a hardware and Yankee-notion dealer, contained in three-story brick building, situate on the east side of Canal street, No. 82, Grand Rapids, Mich." It also appeared that No. 82 was afterwards changed to No. 102 by city ordinance. The place was therefore identical with that specified in the policy issued by plaintiff in error.

Mr. Verdier being sworn, it appeared from his evidence, that for some time prior to the fire he had carried on the business mentioned in this policy, and that about a month before it he took Mr. Brown in as partner, and that it was

then agreed between them that all fire policies should be transferred to the firm, that the policy issued by the Merchants' Company was transferred accordingly, but the policy issued by the Home Company was not assigned, for the reason that on seeking for the agent in order to accomplish that object, it was found that he was not at Grand Rapids, and that the term of the Home policy expired on the first of May, and the premium for renewal was not paid until the day of the fire and just after that event, but was then paid to a clerk of the agent. A renewal receipt was put in evidence, which purported to bear date May 1st, 1874, and to renew the policy for a year from that time at the rate of one and a quarter per cent. It also appeared from the evidence of Mr. Verdier that this policy covered the goods in the store before Brown united with him, and that the adjustment of loss was begun four or five days after the fire and was concluded about two weeks after, and that the agents of plaintiffs in error, of the Underwriters' Association, of the Merchants' Company, and also of the Home Company, participated in it. It seems a necessary inference likewise, that the defendants in error did also.

It further appeared from Mr. Verdier's evidence, that after the loss he assigned the policy of the Home Company to the Hanover Company of New York, being one of the association styled Underwriters, and received therefor the amount he claimed, leaving out the Home Company, or in other words, as subsequently stated by him, that he received from them the amount the loss would bear to the Home Company, provided they had to pay, and that they settled with him on the basis that the Home did not pay any thing.

This evidence was in no way controverted, and it is substantially all we have in the record; and standing as it does, it shows that the defendants in error considered the Home policy in force and operative as an insurance on the stock when the agreement was made between them for an assignment by Verdier to the firm, and when the premium for renewal was paid after the fire, and it also serves to show

that the Home Company so considered it when they took part in the adjustment of loss. We have the further fact of an assignment to the Hanover Company, of the Underwriters' Association, and the circumstance that the Home Company does not appear to have surrendered or returned the renewal premiums, or to have questioned in the least the subsistence of the policy, or the amplitude of its application to the firm stock. As between the defendants in error, the agreement to assign conveyed the equitable right and title to the firm, and the proof given by Mr. Verdier himself is strong to show that the company acquiesced, and were not minded to object that no formal assignment had been made. If the defendants in error and the Home Company mutually assented to the continuance of the Home policy, and its application to the firm stock, as it stood up to the time of the assignment to the Hanover Company, as the uncontradicted evidence is very strong to show, we do not see upon what ground the defendants in error can maintain the opposite to defeat the operation of the seventh article of the policy in suit. The defendants in error and the Home Company were certainly competent to give effect to the arrangement between Verdier and Brown for a transfer, and to keep the policy in life and allow its application in the broadest manner; and all the evidence is very cogent to show that they did so. Notwithstanding the old stock originally insured as the individual insurable interest of Mr. Verdier had become firm stock, still the Home Company received a renewal premium and kept it. We say kept it, because there is no hint of its return, and if it had been returned Mr. Verdier must have known it, and have felt the importance of stating it. He not only did not intimate any thing of the kind, but proved the assignment of the policy as a subsisting one; and still further, that the assignment was made in the way of working out an adjustment of a firm transaction; and in assigning in this way the defendants in error implied by their conduct, that in truth the policy was a firm asset. Then again, the joining of the Home Com-

pany in the adjustment, and the want of objection on their part, are agreeing circumstances with the others, to show that the company and defendants in error were in actual concurrence, that the policy was a living one of defendants in error, and an insurance upon their stock. The conduct of the parties will allow no other explanation unless we go out of the records.

It will hardly do to say that the company, by their agents, were working and spending time in the adjustment of a loss in which they had no interest, or that the conduct of the company's agents, in view of the attitude of defendants in error, or the acquiescence of the company in the claims or assumptions of the latter, may now be set aside or ignored by defendants in error. Neither is it quite admissible for defendants in error to now contradict the whole tenor of their dealings between themselves, and with the Home Company and the other companies, in order to escape from an article in their agreement with plaintiff in error. There was clear evidence to show a contract relation between the defendants in error and the Home Company, within the meaning and operation of the seventh article of the policy in suit. As the court below held otherwise, it erred.

The judgment should be reversed, with costs, and a new trial ordered.

The other Justices concurred.